*HEWES & AL.* vs. *PIERCE.*

APPEAL frow the court of the first district.

PORTER, J. delivered the opinion of the court. The defendant was the owner of certain goods, wares, and merchandise, shipped from Marseilles, in France, consigned to the house of Wm. Fisk & Co. of this city. The goods were regularly entered at the custom house, and the bond given for the duties was signed by the consignees as principals, and by the plaintiffs as sureties. The consiguees became insolvent, and the sureties having taken up the bond, instituted this action to recover the amount paid by them.

In bonds given at the custom-house for duties, the consignee is considered as owner. The person to whom the goods really belong, contracts no debt with the United States when the consignee makes the entry and gives bond for the duties.

The general issue, payment, and a plea that the bond was signed for the accommodation of the consignees, were pleaded

The cause was submitted to a special jury of merchants, who, in opposition to a charge of the court, found for the defendant. The plaintiffs appealed.

The allegations which we have just stated to be contained in the petition were proved on the trial. The only other facts established of much importance were—that the plaintiffs at the time they signed the bond, did not know

East'n District.
June, 1823.

HEWES & AL.
vs.
PIERCE.

who was the owner of the goods, and that the defendant previous to the failure of Fisk & Co. had paid them the amount of the duties for which the bond was given.

Such, in a few words, are the facts of a case, the discussion of which has taken so extensive a range. We think the examination we are obliged to make into the right of the parties will be best conducted by confining ourselves to an inquiry—first, as to what support the action can derive from the statute laws of the United States, under which the bond was taken, and second—upon the general principle, that the surety who pays a debt is subrogated to all the privileges and actions of the creditor.

Upon the first point, we have not had the slightest difficulty, and a reference, to the language used in the act of congress, is sufficient to shew there is no foundation for any. The 55th section of the act to regulate the collection of duties on imports and tonnage, (3 *Bioren's laws*, 197 ) provides that *if the principal* in any bond which shall be given to the United States for duties on goods, wares and merchandize imported. or other penalty, either by himself, his factor, agent, or other person for him, *shall*

*be insolvent,* or if such principal *be deceased,*
and his property shall have come, &c. &c. . . . .

if the surety on said bond, his executors, &c.
shall pay to the United States the money due
upon such bond or bonds, such surety or his re-
presentatives, shall have and enjoy the like ad-
vantage, priority and preference, on the estate
and effects of *such insolvent* and *deceased,* as are
reserved and secured to the United States.

This act *subrogates* the surety to all the rights
which the United States had on the principal.
Our enquiry then on this branch of the subject
lies within the narrowest compass possible,---
it is simply to ascertain *who was principal ;* for
it would avail the plaintiffs little on this branch
of the case, if we agreed with them that the
defendant was liable to the government on a
contract for the duties, formed by the importa-
tion of his goods.    The statute does not subro-
gate them to all the rights of the United States;
it is only the right as it regards the principal, on
the bond, on which the appellants became sure-
ties.

A perusal of the different provisions found in
the acts of congress on this subject has satisfied
us, that *quoad* the entry of goods, and giving
bond for the duties, the consignee is considered

to stand, in relation to the government, as own-
er, and that he is regarded in the execution of
these instruments, not as agent, but as principal.
Indeed congress have expressly said so, for the
62d section of the act already quoted, declares,
that for the purposes of that act, the goods,
wares, and merchandise imported shall be
deemed and held to be the property of the per-
son *to whom they are consigned.* See also *In-
gersoll's Digest,* 206, 207, 208, 210, 224, 229,
231.

Were it otherwise the government have
poorly secured themselves against fraud, and
imposition. The consignee, considered as a-
gent, would in that hypothesis come under no
personal responsibility --and in lieu of it they
would have that of the owner, who is fre-
quently a foreigner, residing in other countries,
and almost always a stranger to those who ac-
cept these instruments. How wide a door this
system would open to deceit, and unfair dealing,
how strongly it would lead men into tempta-
tion, and how wholly inadequate it would be
to secure to the United States a certain collec-
tion of the revenue, it is unnecessary for us to
explain. The inconveniences which must at-
tend it are too great to permit us to suppose it

could ever have been contemplated by the national legislature, and we close our observations on this point, by concluding with judge Story, *that it is beyond all doubt* the owners, *or consignees*, owe the duties, and that they are the persons to whom the law gives a credit. 1 *Mason*, 498.

So far then as the plaintiffs have endeavored to maintain this action, under the act of congress, subrogating them to the rights and privileges of the United States, we think they have failed.

The second point is, that by the laws of this state, the surety, who pays the creditor, is subrogated to all his rights, actions and privileges. This proposition we believe to be correct, and in our jurisprudence it is carried so far that if there be several debtors bound in *solido,* the surety of one of them, who has paid the creditor, has a right to exercise all his actions, not only against the debtor, for whom he expressly became surety, but also against the other co debtors. *C. Code,* 290. 151. *ibid* 430, 14, 15. *Pothier, traite des obligations, part* 6, *sec.* 2, *no.* 520, *l.* 17, *ff de fid. l.* 47. *ff de locat.* Hence, in the case before us, if it should appear the defendant owed the United States, on a contract created by the

HEWES & AL.
vs.
PIERCE.

entering of his goods at the custom house, there is no doubt the plaintiffs are subrogated to all the rights which accrued to the government under that contract. This compels us to an examination of a question, on which it appears two of the judges of the supreme court of the United States sitting at *nisi prius* have expressed opinions, directly in opposition to each other, and on which we feel there is considerable difficulty. For, on a matter, connected with the fiscal regulations of the general government, *we* may well doubt, when the judges of that court are found to differ.

We have anticipated on the first point many observations that might properly have found a place here. The provisions of the statute already quoted, shew that *quo ad*, the importation of goods, and their entry, the consignee was not only considered, but declared to be the owner. This appears to us to preclude all enquiry whether another person be not responsible as owner, for there cannot be two owners for the same thing Joint ownership indeed, when several persons have a right to claim portions of a thing the law recognises, and the mind readily conceives, but the moment one person is made entire owner, no other person

can he held such. The very word *ex vi termini* excludes the idea of participation. We cannot therefore raise liability on the ground that the property belonged to the consignor, when the United States themselves have said that for the purposes of revenue, that property shall be taken to belong to the consignee.

Deciding thus, in pursuance to the strict letter of the law, we give effect to the intention of the parties. For independently of the presumptions which belong to such a transaction, we have express evidence that the security was furnished by the plaintiff, from motives personal to the consignee, and from an understanding between them, that they should accommodate each other, by mutually signing bonds of this kind :—we make the provisions of the statute do justice; for the defendant has already paid Fisk & Co and it is more equitable the plaintiffs who trusted the consignee should loose by him, than that the defendants should be held responsible not only for his own contract, but for those of others ; and finally, we promote the ease and convenience of trade, for it would greatly cramp its foreign operations, if the shipper of the goods, after forwarding to the consignee funds to pay the duties, was obliged, in

East'n District.
*June*, 1823.

HEWES & AL.
*vs.*
PIERCE.

East'n District.
*June*, 1823.

HEWES & AL.
*vs.*
PIERCE.

addition to the right given to government on his goods, to be subject to the collateral engagements, which that consignee and other persons might have entered into.

The judgment of the district court is therefore confirmed with costs.

*Maybin* for the plaintiff, *Ripley* for the defendant.

APPEAL from the court of the first district.